All rise for the noun session. 3-16-0-7-9-0 Thank you, Your Honor. May it please the Court, my name is Bethany Scholz and I represent the appellant, J. Michael Webb. This case affects every transaction in which there is earnest money deposited. The trial court's ruling, if affirmed, provided a green light for sellers to hold that earnest money even after a termination of an agreement and provided a roadmap for those sellers to use the court system as both a sword and a shield. A sword to extract an unbargained for advantage by forcing the buyer to either litigate to get their money back or capitulate and end up without their earnest money. And as a shield to protect against bargained for consequences. Those bargained for consequences include fee shifting provisions and liquidated damages for failing to proceed in accordance with written bargained for agreements. This should not be condoned. In this case, the appellant, Mr. Webb, the buyer, entered into a purchase agreement with the seller, who will be our auto import ink. I like to call him the seller, a bit easier. They entered into a transaction for the purchase and sale of a Volkswagen dealership and the real estate on which it operates. The purchase for the assets was $2.45 million. The real estate, $4 million. But before the transaction closed, the Volkswagen emissions scandal erupted. The assets that were subject to the purchase agreement, they devalued precipitously. Accordingly, the asset agreement and the real estate agreement terminated by its own terms for a failure of the conditions preceding. Trial judge agreed. The seller conceded ultimately. But at that time, on September 18th of 2015, the seller didn't return the earnest money to the buyer. Instead, on October 15th of 2015, the seller filed a declaratory judgment action declaring that it was entitled to keep the earnest money as liquidated damages and sought attorney's fees. Did you say as liquidated damages or and liquidated damages? As liquidated damages. There wasn't a demand for the liquidated damages? I'm sorry, Your Honor, I don't understand your question. I thought there was an additional $50,000 that was provided for as liquidated damages in the contract. Yes, Your Honor. As to the buyer, the seller is the one who filed the original lawsuit. Instead of turning back that, instead of giving back the earnest money when the transaction failed, pursuant to 24.2A, instead, the seller filed a lawsuit keeping that earnest money. Okay, I just need to be sure that I'm on the same page. Yes, Your Honor. My understanding was that Mr. Webb had sent a letter asking for the return of the earnest money and the liquidated damages. Is that not correct? That is correct, Your Honor.  On September 18th, the Volkswagen admission scandal erupted and the agreement terminated. On October, I believe it was October 8th, Mr. Webb demanded his earnest money back because clearly the contract had terminated pursuant to 24.2A, failure for the conditions preceded. He asked for his earnest money back and said, give me my liquidated damages too now because you're not proceeding under an accordance with the contract. And instead of returning the earnest money under the contract, the seller instead filed an instant action seeking to keep the earnest money and also seeking attorney's fees. Okay, let me ask you just one more question. Yes, Your Honor. In the event of a termination of the contract without fault of either party. Yes, Your Honor. There was not supposed to be a payment of the liquidated damages, was there? To neither party, that is absolutely correct. Under 24.2A, what was supposed to happen was simply the earnest money being returned to the buyer. Okay, and then Mr. Webb sent a letter asking for both. Yes, Your Honor. Okay, and it's at that point that Juviar filed its declaratory judgment action? Yes, Your Honor. Okay. And it is important to note that it is at that point that the seller continued to hold the earnest money and did not return the earnest money. So at this point, the buyer was forced to either litigate to get back his earnest money or to capitulate. He was forced to incur attorney's fees and costs over the course of a year. He was forced to forego any other investment opportunities that he may have had during that course of litigation while the earnest money was being still held while litigation was proceeding. And this was all in the hope, seller's hope, that he was going to exact some sort of settlement from the buyer. So that he wouldn't have to give him all of that $150,000 back. Earnest money to which the seller was not entitled. The contract terminated. He wasn't entitled to that money. And it was only after, it was only after that the buyer spent one year in litigation, it was only after that the buyer filed a motion for summary judgment, it was only then that seller conceded that seller wasn't entitled to the earnest money. And then, after conceding that, then the seller hid behind the judgment action and used that as a shield to protect itself from the liquidated damages, provisions within the contract, as well as the attorney's fees provision within the contract. The trial court agreed. The trial court held that because the seller filed a declaratory judgment action, that the bargained for consequences within the contract that these sophisticated businessmen and women had entered into, that those provisions were null and void simply because the seller raced to the courthouse. The lower court's ruling denying enforcement of the liquidated damages clause and the fee shifting clause within the contract should be reversed. Turning to the first point, the liquidated damages clause. 24.2B of the agreement is clear, it is expressed. The seller, if the seller shall fail or refuse to proceed under and in accordance with this agreement without just cause, the earnest money shall be repaid. Not as a penalty, the earnest money shall be returned to the buyer upon its demand and the liquidated sum of $50,000, not as a penalty, shall be given to the buyer. The seller did not proceed in accordance with the agreement. The agreement terminated. Instead of returning the money, the seller filed suit. Agreements between parties are to be strictly construed and enforced. Parties negotiate these terms. They set expectations. They allocate risk. And this was the expectation that the parties agreed to. And the court rewrote those expectations. The court rewrote the provision and made a determination outside of the contract that says, if there is a declaratory judgment action filed, then you no longer have to abide by the agreement. Here's, I've got a question about subsection B there. Yes, right. It says, if the seller shall fail or refuse to proceed under and in accordance with this agreement without just cause, is that talking about any breach of the contract, like refusal to return that, or is that talking about if the seller, so you've got a contract for the sale and purchase of an asset. If that's it, all of a sudden the seller says, I'm not selling anymore. I've changed my mind. I'm not going to proceed with the sale. And are those the circumstances? For example, in paragraph C, it says, if the buyer shall refuse to proceed. So, for example, the buyer says, you know, I've changed my mind. I don't want the place. Well, in that case, under the terms of C, and if it isn't just cause, then the seller gets to keep the earnest money. So, I'm just wondering if paragraph B applies to the situation before us, where they agree that the contract has terminated, but now there's a dispute over earnest money. Your Honor, the plain language of that provision says, shall fail or refuse to proceed under and in accordance. Now, the way the trial court read it, the trial court read it that performance never came due. This doesn't talk about performance. This talks about proceeding in accordance with the agreement. So, to your Honor's question, certainly if the seller had said, you know what, I'm just not willing to sell anymore, well, that would certainly fall within that provision. But other things would fall within that provision as well. So long as the seller refuses to proceed in accordance with the agreement, not necessarily to close, because when parties contract on these types of agreements, these agreements don't just focus on getting to the closing. What if it's not going to close? What if something happens where the agreement terminates? These agreements talk about how to unwind the transaction as well. So, it's not just proceeding to the closing. So, if you choose not to close, you're done. It's what happens if these conditions aren't met? Then what do we do? Well, then we still have to follow the agreement. And the way we follow the agreement is, in this case, we return the earnest money to the buyer. So, this isn't just talking about proceeding to close. This is talking about the entire agreement. And therein is exactly the issue that we have with the trial court's order. The trial court wrote this to solely focus on closing. This isn't focused on closing. This is focused on proceeding with the agreement. And the seller failed to proceed with the agreement. With respect to the attorney fee provision, similarly, the court and the seller went down the same road. If there's a declaratory judgment action filed, then there is no fee-shifting provision. That is not the law. Fee-shifting provisions, as liquidated damages provisions, are strictly enforced and strictly construed. The cases cited by the court to support its order that fee-shifting provision, in this case, should not be followed, should not be enforced, are distinguishable. Those are cases in which the fee-shifting provision expressly stated, for an example, the suit had to be brought to enforce rights. Well, the declaratory judgment action does not enforce rights. It declares rights. In our case, that's not what the fee-shifting provision said. The fee-shifting provision was brought. Let me just say one thing. Yes, Your Honor. What pleadings did you all file in response to the declaratory judgment action? We filed a declaratory judgment action declaring that, in fact, we were, that, in fact, the contract terminated pursuant to 24.2A, which was because of the Volkswagen emissions scandal. And based upon the seller's filing of the declaratory judgment action, instead of returning our earnest money, we filed a claim for the liquidated damages pursuant to 24.2B, and we also filed a claim for attorney's fees. And returning your earnest money. Yes, Your Honor. Yes, Your Honor. As I see my time has expired, I will answer further questions if the Court has any. Otherwise, I will prepare for rebuttal. Thank you. Thank you, Ms. Jones. And Mr. Murthy. Justice Litton, Justice McDade, Justice Schmidt, first of all, I want to apologize. I'm not sure if you're aware that I was late, but I was. I somehow didn't read my calendar correctly, and I'm mortified for that. I would not want to keep you waiting. Justice McDade, I think you asked or got into some of the most pertinent questions, and that was the sequencing of events that has led to this. The purchaser sent a letter after the Volkswagen emissions scandal demanding not just the earnest money, but the $50,000 punitive debt or the $50,000 damages also. In fact, if we're talking about these being applicable not to proceeding on purchase, and we're talking about just proceeding in accordance with the contract, that demand in itself was inappropriate at that time because, frankly, seller had done nothing at that time. It hadn't addressed the earnest money at that issue. We're also dealing with a very unprecedented issue where we're not dealing with really what brought about this was the seller or the buyer, but a third party, which was Volkswagen, who actually makes the car. One of the things, and quite frankly, in terms of the background of this, it was not clear. It was possible that the value of the dealership went down with all of that, but values of dealerships and other businesses take many things into account, and that really never was gone into, but it was recognized by us what expense would have been involved in doing that. And so, finally, we conceded on that issue. But we didn't believe that the $50,000 was owed, and still do not believe it because it really talks about what happens under three different scenarios, when there's no fault, when there's fault by buyer, when there's fault by seller. Here, in the complaint, basically in all of this, you seem to have a question. I was going to say, but even given what you just said, you didn't pony up the $150,000. Actually, what we did is when we conceded that, a judgment was entered, and then we gave the $150,000. We didn't do it until well along into the litigation. That's true. But in terms of when we finally made that determination, we conceded it. It was shortly thereafter. But at the time, and then what you got into is this $50,000 issue, is when would that be due or under what circumstances? Here, you've got the $150,000. That goes to what happens if the sale is approximated. That is liquidated damage that's determined for that. Do you then have another $50,000 is liquidated damages if that's not paid over? That's really not what that goes to because all within the same section. Again, it provides for three different provisions. Let me ask you, what changed from the day before you filed your declaratory action and the time that you conceded that you owed the $150,000? Truthfully, it's probably that I went through another litigation and spent $70,000 or $80,000 on expert fees on valuation. It was really a business judgment at that point in time. It's not in the record, but having gone through that, you recognize, and in this case, we're not talking about just one business, but perhaps what all of Volkswagen does to a business when this has happened. That talks more about economists, maybe what's happening throughout the states of valuations. Who knows? Just as a practical matter, it was a cost that when you have the goals somewhere between $200,000, zero and $200,000, you don't want to spend $200,000 litigating the thing. We think we've prevailed on that. If we hold that, in fact, we have prevailed on an issue. They have prevailed on an issue. I'll give them that with regard to whether I put the $150,000 return of the earnest money. Then you get to the attorney's fees. First of all, Judge Anderson determined that attorney's fees weren't appropriate in a declaratory judgment action. That seems appropriate because when counsel talked about using a declaratory judgment action to hide behind something, that's not what they're for. They're actually to figure out what are the rules, what do we have to do so we go on without a breach. By coming up and saying a declaratory judgment action isn't a declaratory judgment action and doesn't provide the means of making those determinations, that's really undercutting, I think, part of what is available to litigants. I think that would be a dangerous precedent. If we go to the prevailing party issue, though, the other thing that hasn't been determined is that is a determination usually for the trial court. I would submit to you when there are two issues and each party prevails on one, there's not a prevailing party regardless of the amounts. It's not a sub-issue, as was claimed in the brief, because this is an interpretation of the very same provision. One follows after the other. First you have termination agreement, determining what subparagraph A means, determining what subparagraph B means, determining what subparagraph C means, and what they all mean in conjunction with one another. So it's certainly not a sub-issue to say that the $50,000 is a sub-issue to the earnest money. They're really on a parallel with one another. So I'd say that I think this court might be able to look at it and say there really isn't a prevailing party, but absent that, if there's a question of prevailing party that the attorney's fees could be applied in a situation like this, then you would have to send it down to the trial court for determination of whether there was a prevailing party or not. Is Webb's declaratory judgment action a separate action, or is it mixed in with this one? It's really mixed in with it because it really seeks the converse of what we were seeking. So it doesn't seek... It was a counterclaim? It was effectively a counterclaim. I mean, to the extent that's appropriate terminology within a declaratory judgment because you're really seeking what the rules of the game are. Functionally a counterclaim. Okay. I take it that your opponent's pleadings did seek judgment against your client... Yes. ...money... Yes. ...which is not normally what happens in a declaratory. No, but it was set forth in the terms of the declaratory and declaratory relief. And, you know, it's one of those things ultimately when, you know, it's sort of the cart follows the horse as a natural progression. Well, but if you have to declare so many files in the declaratory and say, for example, I want the court to declare I didn't breach the contract, and then the other party comes in and says, well, in response says, well, we deny that, but also we want you to declare that they did breach the contract and, ergo, they owe us X dollars, and we want judgment in that amount. And that is somewhat, I guess, what happened. And I think it's the question, you know, what's different is when you have liquidated damages, you don't have to have approval of what the actual damages are. You say what the contract means. There's a natural progression in terms of where it goes from there. Thank you. Thank you, Mr. Mitchell. And Ms. Charles. Thank you. Justice Schmitt, to your point about declaratory judgment actions, it is unusual to be seeking monetary relief in a declaratory judgment action. However, this case wasn't, or I guess you should say was unique because the original complaint that was filed, the original declaratory judgment action that was filed by the seller sought a declaration that the seller was entitled to keep the earnest money as liquidated damages, so affirmative relief, and sought attorney's fees pursuant to the very same attorney fee provision under which Mr. Webb, the buyer, seeks attorney's fees. To be sure, parties in contracts, as we previously discussed, they negotiate terms to set expectations. They negotiate terms to allocate risk. They negotiate terms to avoid surprise. One of those risks that are allocated, generally speaking, in these types of contracts, is the risk of litigation. In this case, that risk of litigation was to be borne by the non-prevailing party. In other words, the prevailing party was to be given their attorney's fees and costs. In this particular case, the buyer was the prevailing party. The main issue in the case is whether the seller was entitled to the attorney's fees or the buyer, or excuse me, the seller was entitled to the earnest money or the buyer. If the seller is entitled to the earnest money, then it gets liquidated damages because those are the liquidated damages. Let me ask, as this suit began, or at the time they all write letters, was there any reasonable basis for the seller to say that, gee, there's no reason not to go forward with this contract. Whatever happened with Volkswagen really did not significantly affect the value of what it is we're selling and you're buying. No, Your Honor. The value of these vehicles, first of all, this wasn't just a dome light. This wasn't even just an airbag issue. This was a criminal investigation. This was huge. It was worldwide and over 80% of the purchase price for the assets of the dealership were based upon the blue sky and franchise value. That's the value of the Volkswagen name. That's what the buyer was buying. And that name was sullied. That name was dragged through the mud. That name was in a criminal investigation, a worldwide criminal investigation. And not only was it an investigation, but Volkswagen admitted that they did it. They admitted to consumer fraud. They admitted to federal fraud. So this wasn't just a small issue. This was a huge issue. And even the court, and it is in the record and I apologize I don't have the page site, but in the court's order regarding the motion to dismiss, the court expressly stated that it was not reasonable to determine that the value of these assets were not negatively substantially impacted by the Volkswagen emission scandal. Accordingly, we have prevailed on the main item in the case, which is who gets this earnest money. The earnest money is the buyers. The buyer is the prevailing party and there is absolutely nothing within the attorney fee provision which indicates that a declaratory judgment action should nullify the attorney fee shifting provision. When you all first sent the letter saying we want our earnest money back and the liquidated damages, at the time you wrote that letter, what was your entitlement to the liquidated damages? Your Honor, it was specious at that time. First of all, the scandal had erupted. So certainly as of September 18th, the agreement terminated. As of that point, the buyer was entitled to the return of its earnest money. Now the question becomes, what did forthwith mean? As much as contracts try to allocate risk and avoid surprise and make things definite, what does forthwith mean? Does it mean within 24 hours? Does it mean within 48 hours? Does it mean within six months? It doesn't say. But forthwith certainly doesn't mean file a lawsuit instead. So it is certainly our position that the buyer should have been given its earnest money, his earnest money back immediately, the next day, two days, three days. It's held in escrow. It didn't get there. Two days after it's demanded or just two days? After the termination of the contract. And this was by agreement? Or you're just saying by its own proof? Your Honor, pursuant to 24.2A, the contract terminated for a failure of a condition precedent. That condition precedent did not require notice. It did not require intent to cure. And it wasn't one of those like evergreen clauses where you have to send notice in order to make it so. So, yes, it simply terminated, poof. Well, so something that happens, and I realize you've got a bigger case here, but something happens out here that some third party that neither you nor you agree the seller had any control over, and they're supposed to know that you don't want to, the buyer no longer wants to proceed and write a check and send it in the mail before you even say, hey, we don't want to, we think it's terminated, and here it goes, send us our money back. Your Honor, at that time, and this isn't in the record, but as counsel was explaining the seller's thought process and intent, at that time had seller returned the earnest money, it would have been done. They didn't. Well, and I guess where I'm going is did the demand for liquidated damages at a point when there's no, you know, the first communication from your client, from the buyer to the seller was give us our earnest money and liquidated damages? Yes, Your Honor. The liquidated damages clause, both with respect to 24.2B and 24.2C, so both with respect to the provision under which the seller sought to keep the earnest money and liquidated damages and the converse provision, both of them indicate that it is a failure to proceed in accordance with the agreement. The buyer's letter did not do anything with respect to the buyer's proceeding in accordance with the agreement. Had the seller, had the seller given back the earnest money, and then at that point had the buyer said that's not good enough, and the buyer done something in addition there too that didn't agree with the agreements, then the buyer wouldn't have been proceeding in accordance with the agreement. But there was nothing in the agreement that required the buyer to send any kind of notification. So any notification that the buyer sent couldn't possibly be deemed violative of the agreement at that time. I'm not seeing any, oh, I'm sorry. Go ahead, go ahead. Any language in subsection A that talks about the agreement going poof, that it just disappears if there's some, if one party thinks there's something wrong. No, Your Honor. You're absolutely right. Within that particular paragraph, that doesn't say that. You are absolutely correct. You said section A. Where we look for why section A comes into being is we look under the, I apologize. May I grab my, thank you. Where we look, Your Honor, is we look under the terms and conditions, and we look under the refs and warranties. And under those, that is where we find all of the various conditions that have to be satisfied in order for the contract to, in order for the agreement to proceed to closing. And so some of those refs and warranties, which I thought I had out, and I don't. They include things like the value of the assets. They include those types of things. They include that seller can convey good title free of any liens or investigations, those types of things. So it was those conditions preceded that failed. And those conditions preceded, if a condition preceding fails under those terms, then the termination provision under 24.2A is triggered. The agreement is terminated. On what date did that occur? That occurred on the date that the emissions scandal erupted. That was September 18th, 2015. So the day it hits the newspaper that Volkwagen's got a problem? Stock price plummeted. Assets were not worth what they were worth on the day that we signed this contract. But don't the parties have to agree that the contract is over? No, Your Honor, they don't. Does somebody have to say that it's over? Not pursuant to the agreement. Sorry, you're saying that just because there was something in the newspaper, fake news maybe, that there was something in the newspaper that this agreement just disintegrated? Well, the agreement doesn't disintegrate. Because what the agreement does is the agreement talks about how to unwind the provisions, right? And so the agreement itself doesn't terminate. The agreement terminates with respect to closing on the dealership, right? But it doesn't, the agreement still has to be followed to unwind the transaction. You still have this earnest money out there. The earnest money has to be returned. So the agreement isn't terminated? According to 24.2A. It says if it's terminated. Right, without the fault of either party. And that would be pursuant to the Volkswagen emissions scandal, which caused the conditions proceeding to fail. So the agreement couldn't proceed to closing. But your client asked for that and demanded more under B, when the seller hadn't refused to do anything yet as far as the return of the money. When was that letter sent? Within a month? Yes, it was within a month, Your Honor. Okay. You know, I mean, it would seem reasonable that when you're talking about a contract worth over $5 million that for people to sit and think about something for a few weeks, and as stuff's hitting the newspaper and the news is getting out there, it would seem like a reasonable amount of time. And I guess what I'm going is, hypothetically, if the trial court was right in not awarding liquidated damages, then you've got a situation where you prevail on the earnest money, they prevail on the liquidated damages. So for purposes of attorney's fees, who's the prevailing party? Your Honor, this case was brought by the seller to keep the earnest money. That was the claim. The seller failed in that claim. That would require that the buyer is the prevailing party, at least with respect to the declaratory judgment action filed by the seller. Now, with respect to the declaratory judgment action filed by the buyer, they are part and parcel. The buyer never would have filed its counterclaim for liquidated damages had the seller not originally filed the declaratory judgment action. So the issue of buyer's liquidated damages claim is subsumed. It's a sub-issue. You say the buyer wouldn't have done that, that the buyer sent him a letter and said, give us our earnest money and 50K in liquidated damages, right? Yes, Your Honor, but there is nothing in the record that indicates that the seller would have filed a lawsuit if the seller had gotten his earnest money back. And to believe otherwise reads far too much into the record, first of all, and second of all, goes outside of the scope of the agreement. The agreement between the parties is very clear. And these agreements need to be strictly construed and enforced. I need to call a witness. Very well. For those reasons, may I please conclude? Please. For the reasons stated in the briefs as well as in oral argument, the buyer requests that this court reverse the trial court's decision with respect to the liquidated damages and the attorney's fees. Thank you. Thank you, Ms. Schultz. And thank you both for your input today. We'll take this matter under advisement and get back to you with a written disposition within a short time. We'll now take a short recess. Good night.